UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**RANDAL FUSI, et al.,**

      **Plaintiffs,**

-v-

**EMERY WORLDWIDE AIRLINES,
INC., et al.,**

      **Defendants.**

**Case No. C-3-07-039**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER OVERRULING DEFENDANTS' JOINT MOTION
TO TRANSFER VENUE (Doc. #13)**

---

This matter comes before the Court on Defendants' Motion To Transfer Venue. The Plaintiffs in this matter are Randal Fusi, Timothy Vest, Craig Sandman, Patrick Arnello, Robert Kircher, Richard Newberry, Rob Ferguson, Nick Stephens, Reeve Birmingham, Steven Zettler and Mike Farrell (collectively the "Plaintiffs"). Defendants in this matter are Emery Worldwide Airlines ("EWA"), Menlo Worldwide Forwarding, Inc. ("EWW") and CNF, Inc. ("CNF") (collectively the "Corporate Defendants"). The Air Line Pilots Association International ("ALPA") is also a Defendant.

Plaintiff's First Amended Complaint ("FAC") includes three Claims for Relief. The First Claim for Relief is an alleged "hybrid" claim under the Railway Labor Act ("RLA") against EWA for breach of a collective bargaining agreement, against EWW for breach of a subcontractor letter of agreement and against ALPA for breach of its duty of fair representation. The Second Claim for Relief is against ALPA under the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 401 et seq. The Third Claim for Relief seeks to compel the

Corporate Defendants to arbitrate certain grievances.

## FACTUAL BACKGROUND

**1.    The Parties and Initial Agreements**

The Plaintiffs are furloughed flight crewmembers of EWA. (FAC ¶ 1.) One of the Plaintiffs resides in Ohio, two reside in California, three reside in Florida, one resides in the state of Washington, one in Connecticut, one in Georgia, one in Arizona and the state of residence of one of the Plaintiffs is not indicated in the Complaint.

EWA is a Nevada Corporation that designates its principal place of business as Ohio, presently has no employees and presently conducts no business operations. (Declaration of Mark C. Thickpenny ("Thickpenny Decl.") ¶ 4 June 8, 2007). EWA previously operated as a "common air carrier" but ceased its commercial air carrier operations on August 13, 2001, in response to a threat by the Federal Aviation Administration that it would revoke EWA's operating certificate if EWA did not voluntarily ground its aircraft. (Id. ¶ 5.) On December 4, 2001, EWA's cessation of air carrier operations and the furloughs of its flight crew members became permanent. (Id. ¶ 5.)

At all times relevant, EWW was a freight forwarding corporation organized under the laws of Delaware with its principal place of business in California. (Id. ¶ 6.) EWW was EWA's principal customer until December of 2004 when it was merged into its purchaser and successor, UPS Supply Chain Solutions, Inc. ("UPS-SCS"). (Id. ¶¶ 6-7.)

CNF, now known as Con-way, Inc, is a holding company of various global supply-chain businesses.(Id. ¶¶ 1-2.) CNF is a Delaware corporation with its principal place of business in California. ( Id. ¶ 2.) CNF is EWA's corporate parent and, until December 2004, was EWW's

corporate parent. (Id. ¶¶ 4, 6.)

ALPA is a labor organization with headquarters in Washington, D.C. and Herndon, Virginia. (Declaration of Marcus Migliore ("Migliore Decl. I") ¶ 2 June. 14, 2007). ALPA represents flight crew members throughout the country. (Id.)

In September 2000, EWA and ALPA executed a Collective Bargaining Agreement (the "CBA") that established the terms and conditions of employment for EWA's flight crewmembers. (FAC ¶ 12.) At the same time, EWA, EWW and ALPA executed a Subcontracting Letter of Agreement ("SLA") regarding subcontracting. (FAC ¶ 13.) The SLA provided that EWW would successively, in each calendar year from 2001 through 2004, increase the proportion of its air freight transported by air by EWA and Ryan Airlines. (Id.)

**2.     The 2001 Grounding and Shutdown and the Resulting Grievances**

On August 13, 2001, EWA ceased commercial air carrier operations and furloughed all of its flight crewmembers. (Id. ¶ 14-15.) That same day, ALPA filed grievances under the CBA and a dispute under the SLA to challenge the propriety of EWA's cessation of operations, the flight crewmembers furloughs and EWW's alleged noncompliance with the SLA's subcontracting limitations (the "Grounding Grievances"). (FAC ¶ 15; Request for Judicial Notice In Support of Defendants' Motion To Transfer Venue ("RJN") Ex. OO, PP.)

On December 5, 2001, EWA permanently ceased operations. (Id. ¶ 17.) The previous furloughs then became a permanent termination of employment. (Id.) In January of 2002, ALPA again filed grievances claiming that the shutdown and furlough violated the CBA. (Id. ¶ 18.) ALPA also filed a second grievance under the SLA alleging EWW's continuing noncompliance. (RJN Ex. OO, PP.) The grievances filed after EWA permanently ceased operations are

collectively referred to herein as the "Shutdown Grievances."

In 2001 and 2002, EWA and ALPA arbitrated the Grounding Grievances regarding violation of the CBA before the EWW System Board of Adjustment and arbitrated the Grounding Grievance regarding violation of the SLA before a Permanent Umpire.[1] (RJN Ex. OO, PP.) The System Board and the Permanent Umpire held that the August 2001 grounding of EWA's aircraft was a force majeure event that excused both EWA's obligations under the CBA and EWW's obligations under the SLA. (Id.)

In November and December of 2002, ALPA and EWA agreed to arbitrate the Shutdown grievances. (FAC ¶ 19.) EWW refused to arbitrate the Shutdown Grievance regarding the alleged violation of the SLA. (Id.)

**3.     The Ensuing Litigation**

On March 14, 2003, 133 flight crewmembers filed suit against ALPA, EWA, EWW and CNF in the United States Court for the Northern District of California, San Francisco Division. *Rachford v. Air Line Pilots Association International*, No. C 03-01103 ("*Rachford I*"). The *Rachford I* Plaintiffs sought a declaratory judgment that, among other things, they have a right to be represented by counsel of their choice in any negotiation, System Board arbitration or action in a court of law concerning any claims by Plaintiffs against EWA, EWW and CNF for a breach of the CBA. (RJN Ex. A.) The *Rachford I* Plaintiffs also sought a declaratory judgment that the grievances filed by ALPA against EWA and EWW regarding the shutdown should not be arbitrated but, rather, heard by a court of law. (Id.) The *Rachford I* Plaintiffs were willing to

---

[1] Disputes arising under the CBA were to be arbitrated before the System Board of Adjustment and disputes arising under the SLA were to be arbitrated before a Permanent Umpire. (RJN Ex. OO, PP.)

-4-

dismiss the request for declaratory judgment regarding hearing of the grievances in a court of law but argued that the dismissal should be without prejudice to avoid any prejudicial effect on claims asserted in *Rachford II,* another lawsuit then pending. (RJN Ex. J.)

On September 14, 2005, ALPA's counsel agreed to not raise any objection to the *Rachford I* Plaintiffs being represented by counsel of their choice in any negotiations, System Board arbitration or action in a court of law concerning any claims that the *Rachford I* Plaintiffs may have against EWA, EWW and CNF for breach of the CBA and the SLA. (Declaration of Jeffrey B. Demain ("Demain Decl.") Ex. A. June 14, 2007.) *Rachford I* was ultimately dismissed on December 30, 2005, by District Court Judge Hamilton. (RJN Ex. J.) Judge Hamilton found that the *Rachford I* Plaintiffs' request for a declaratory judgment that they have a right to obtain their own representation was moot because ALPA allegedly had agreed to the request. (Id.) Judge Hamilton also found that dismissal of the other claims against ALPA should be without prejudice to the question being raised in *Rachford II* but with prejudice to the question being raised in all other respects. (Id.)

On April 4, 2003, after *Rachford I* had been filed, ALPA filed suit in Federal District Court for the Northern District of California against EWA and EWW seeking to compel arbitration of the Shutdown Grievances. *ALPA v. Emery Worldwide Airlines, Inc.*, No. C 03-1449 ("*ALPA v. EWA*"). EWA and EWW claimed that the parties had settled the Shutdown Grievances in the first quarter of 2003 but Judge Hamilton concluded that the parties had not yet reached an enforceable settlement. (Demain Decl. ¶ 4; RJN Ex. E.) On August 8, 2006, ALPA and EWA settled *ALPA v. EWA* on behalf of and with regard to only those 279 former EWA flight crewmembers still represented by ALPA. (FAC ¶ 27; Demain Decl. Ex. B.)

The August 8 Settlement Agreement identified each flight crewmember represented by ALPA in connection with the settlement and specifically preserved the rights of the *Rachford I* Plaintiffs to pursue the Shutdown Grievances on their own behalf.[2] (Demain Decl. Ex. B.) The Plaintiffs here are among a group of flight crewmembers who sent letters to ALPA indicating that ALPA did not have the flight crewmembers' consent to settle the pending grievances. (FAC ¶ 28.) The grievances were resolved and settlement reached without any notice and without representation of Plaintiffs in the matter. (FAC ¶ 27.) The settlement agreement signed by ALPA and EWA also terminated the CBA. (Id.)

Subsequent to this settlement, Plaintiffs sent letters to the Corporate Defendants' lead counsel demanding arbitration of the ALPA grievances. (FAC ¶ 32.) The Corporate Defendants have refused to agree to arbitrate these grievances. (Id. ¶ 33.)

On August 4, 2003, while *Rachford I* and *ALPA v. EWA* were still pending, 270 former flight crewmembers, including the Plaintiffs in this case, filed another lawsuit against ALPA, EWA, EWW and CNF. *Rachford v. Air Line Pilots Association International*, No. 03-03618 ("*Rachford II*"). The *Rachford II* Plaintiffs initially alleged that ALPA breached its duty of fair representation by settling the Shutdown Grievances and that EWA and EWW had breached the CBA and SLA in connection with the furloughs. (RJN Ex. S.) These two allegations were ultimately dismissed because they were predicated upon the existence of an enforceable settlement. (RJN Ex. F.) However, *Rachford II* evolved into a class action brought by four plaintiffs making eleven claims for relief. (RJN Ex. V.)

---

[2]The Plaintiffs argue that this settlement has a significant effect on their rights and interests and that such effect was caused by ALPA's failure to honor the promise made to the court at the conclusion of *Rachford I*.

On April 10, 2006, the only remaining claim against ALPA was dismissed. (RJN Ex. X.) In separate proceedings between May and September of 2006, the court ordered arbitration of the *Rachford II* plaintiffs' claim against EWW for breach of the SLA and dismissed all remaining claims. (Declaration of Michael C. Hallerud ("Hallerud Decl.") ¶¶ 7-8 June 11, 2007.) Arbitral proceedings regarding breach of the SLA have begun and the Rockford II plaintiffs have appealed the dismissal of the remaining claims, an appeal which remains pending. (Id. ¶¶ 7, 9.)

On October 4, 2006, two additional cases were filed in the Northern District of California regarding the Shutdown Grievances. (RJN Exs. EE, HH.) *Call v. Emery Worldwide Airlines, Inc.*, No. 06-6245 and *Del Turco v. Emery Worldwide Airlines, Inc.*, No. 06-6246 were pro se lawsuits that sought to compel the arbitration of the Shutdown Grievances. (Id.) Both lawsuits were voluntarily dismissed in December of 2006. (RJN Exs. GG, HH.)  The plaintiffs in these cases are not plaintiffs in the matter now before this Court.

On February 7, 2007, Plaintiffs filed the litigation that is now before the Court.[3] *Rachford I* has been dismissed. *ALPA v. EWA* has been settled on behalf of the flight crewmembers. represented by ALPA. *Call v. Emery* and *Del Turco v. Emery* have been dismissed. Regarding *Rachford II*, arbitral proceedings about breach of the SLA have begun and the plaintiffs have appealed the dismissal of the remaining claims, an appeal which remains pending. Regarding the Complaint that is now before this Court, the Plaintiffs argue that since ALPA and the Corporate Defendants have terminated the CBA and since the Corporate Defendants now refuse to arbitrate

---

[3] The Southern District of Ohio is currently serving as the venue for a case where the Corporate Defendants in this case are parties. *Bledsoe v. Emery Worldwide Airlines*, No. C-3-02-068 (S.D. Ohio). Also, ALPA has recently been a party to an action in the Southern District of Ohio. *Air Line Pilots Association, International v. DHL Holdings(USA), Inc.*, No. 1:06cv823 (S.D. Ohio).

their grievances, they have no means other than litigation to seek relief or to compel the Corporate Defendants to arbitrate their grievances.

## MOTION TO TRANSFER VENUE

Motions to transfer venue, such as the one now before the Court, are governed by 28 U.S.C. § 1404(a). *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of such a transfer is to "prevent that waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen*, 376 U.S. at 616.

District courts have wide discretion in deciding motions to transfer. *Van Dusen*, 376 U.S. at 616, *Norwood v. Kirkpatrick*, 349 U.S. 29, 31-32 (1955). Further, "[s]ection 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient. *Van Dusen*, 376 U.S. at 645-46. Finally, the moving party, the Defendants in this case, bears the burden of proving why a court should grant a transfer. *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

When deciding a motion to transfer venue, the threshold consideration is whether the action "might have been brought" in the court to which the movant wishes to transfer. *Jamhour v. Scottsdale Insurance Co.*, 211 F.Supp.2d 941, 945 (S.D. Ohio 2002)(citing *Sky Technology Partners LLC v. Midwest Research Institute*, 125 F.Supp.2d 286, 291 (S.D. Ohio 2000)). An action might have been brought in the court to which the movant wishes to transfer (the "transferee court") if:

      a. the transferee court has jurisdiction over the subject matter of the action,
      b. venue is proper in the transferee court, and
      c. the defendants are amenable to process issuing out of the transferee court.

*Id.*

If the threshold consideration is satisfied, the court next weighs case-specific factors to determine whether a transfer would comport with Section 1404(a). *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). The factors to be considered are similar to those weighed by courts in determining *forum non conveniens* motions except that transfers pursuant to Section 1404(a) may be granted "upon a lesser showing of inconvenience." *Jamhour*, 211 F.Supp.2d at 945 (citing *Norwood*, 349 U.S. at 32).

The factors to be considered that are relevant to this case fall into two general categories: the private interests of the litigants and the public's interest in the administration of justice. *Id.* The litigants' interests relevant to this matter include: the convenience of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; and other practical problems that make trial of the case easy, expeditions and inexpensive. *See id.* The Public's interests relevant to this matter include: docket congestion; the burden of trial to a jurisdiction with no relation to the cause of action; the value of holding trial in a community where the public affected live; the familiarity of the court with controlling law; judicial economy; and the avoidance of inconsistent judgments. *See Jamhour*, 211 F.Supp.2d at 945-46; *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 386 F.Supp.2d 708, 721 (E.D.Va. 2005). Finally, the plaintiff's choice of forum is given considerable weight and the balance of convenience, considering all of the relevant factors "should be strongly in favor of a transfer

before such will be granted." *Jamhour*, 211 F.Supp.2d at 946 (citing *Hanning v. New England Mutual Life Insurance Co.*, 710 F.Supp. 213, 214 (S.D. Ohio 1989)).

## THRESHOLD CONSIDERATION

In this case, the Defendants want to transfer this action to the United States District Court for the Northern District of California and present argument that this action might have been brought in the Northern District of California. The Plaintiffs agree that their action could have been brought in the Northern District of California.

The Northern District of California has original subject matter jurisdiction over Plaintiffs' Claims for Relief which are brought pursuant to federal law. Further, according to the Defendants, the Northern District of California has personal jurisdiction over all of them. ALPA represents pilots located in the Northern District of California. EWA and EWW were licensed to do business in California and had significant contacts there. Further, EWW and CNF both maintain their principal place of business in California. Finally, according to the Defendants, venue is proper in the Northern District of California because all Defendants "reside" in California for purposes of the venue statute.

Therefore, the threshold requirement is satisfied. The Northern District of California has jurisdiction over the subject matter of the action, venue is proper in the Northern District of California, and the Defendants are amenable to process issuing out of the United States District Court of the Northern District of California. Plaintiffs' Complaint might have been brought in the United States District Court for the Northern District of California. The analysis next turns to the private interests of the litigants.

## PRIVATE INTERESTS OF THE LITIGANTS

The relative factors to be considered as private interests include: the convenience of the Parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; and other practical problems that make trial of the case easy, expeditious and inexpensive. Each will be addressed seriatim.

**1.	Convenience of the Parties**

The Defendants argue that the convenience of the Parties "strongly" favors venue in California. However, the evidence indicates that "strongly" may be an overstatement..

The Parties are found in diverse locations throughout the United States. One of the Plaintiffs resides in Ohio, two reside in California, three reside in Florida, one resides in Georgia, one resides in Arizona and the state of residence of one of the Plaintiffs is not indicated on the complaint.

As for the Defendants, ALPA's principal place of businesses are in the Washington D.C. area. EWA's principal place of business is Ohio. [4] EWW and CNF identify California as their principal place of business.

**2.	Convenience of the Witnesses**

The Defendants argue that the location of the witnesses favors venue in California. However, as above, the evidence indicates that the Defendants' argument is debatable, particularly considering that the convenience of witnesses who are employees of a party is generally not given as much consideration as is given to other witnesses. *Zimmer Enterprises, Inc. v. Atlandia Imports, Inc.*, 478 F.Supp.2d 983, 991 (S.D. Ohio 2007).

---

[4]EWA presently has no employees. (Thickpenny Decl. ¶ 4.)

The Defendants first argue that nine of the participants in the negotiations and mediation that culminated in the August 8 Settlement are residents of California and none of the key witnesses are Ohio residents. The Plaintiffs respond that all of those who participated in the negotiations on behalf of the Corporate Defendants are still employed by the Corporate Defendants and, of those who participated on behalf of ALPA, one is no longer an employee.

The Defendants reply that some of the individuals counted as employees by the Plaintiffs are actually lawyers who are not employees of the Corporate Defendants. However, if these individuals were acting on behalf of the Corporate Defendants, they arguably are treated the same as Corporate Defendants for purposes of this analysis.

The Plaintiffs also respond that their claims are based upon the terms and effect of the Settlement Agreement, the language of which has already been placed before the Court. Presumably, then, since the terms of the Settlement Agreement are available, the importance of testimony from those who participated in its preparation is minimal at best.

The Defendants next argue that five of the key witnesses involved in the bargaining of the CBA and SLA are California residents, three of which have retired. The Plaintiffs respond that, with regard to the grievance dispute, of those who actually participated on behalf of the Corporate Defendants, none are still employed by the Corporate Defendants - two are residents of California, one is a resident of Connecticut and one is a resident of North Carolina. Of those who participated on behalf of ALPA, one is no longer an employee and is a resident of Florida.

Defendants also argue that the retirees would not be subject to compulsory process in Ohio under Fed. R. Civ. P. 45 and there are no means of ensuring their presence in Ohio. However, if these witnesses are unwilling and not subject to compulsory process, they would not

-12-

be inconvenienced by a trial in Ohio any more than by a trial in California.

3.     **Ease of Access To Other Sources of Proof**

Plaintiffs expect that most of the real evidence necessary for this litigation will be identifiable documents which are easily transferable to the chosen venue. This factor is not addressed by the Defendants and does not favor transfer to California.

4.     **Availability of Compulsory Process for Attendance of Unwilling Witnesses**

The Plaintiffs argue that the 1991 Amendments to Fed. R. Civ. P. 45 allow for effective nationwide service of process. They, therefore, have access to compulsory process to ensure the presence of unwilling witnesses. The Defendants respond that Rule 45 governs the attendance of unwilling witnesses at deposition, not at trial.

Rule 45 addresses the subpoena for attendance at trial. It also provides that such a subpoena may be quashed under certain circumstances. However, this line of argument is not relevant to the factor being considered because no unwilling witnesses have been identified by either party.

The Defendants also argue that, because it would be impossible to compel the attendance of all unwilling witnesses in any venue, California should be chosen because the Defendants would be able to compel more unwilling witnesses there, including those whose testimony would have greater significance. However, it is not possible, based upon the information provided by the Parties, to determine whose testimony will have a greater significance, where that individual is located and if that individual would be an unwilling witness. Therefore, this factor does not favor transfer.

5.     **Cost of Obtaining Willing Witnesses**

The Defendants do not address this factor in the Memorandum In Support of their Motion. They do, however, argue in their Reply brief that the cost of obtaining willing witnesses favors transfer to California. The basis for this argument is their assertion that fourteen of the potential witnesses reside in California while only two reside in Ohio and the remaining ten will have to travel regardless of the forum selected. The Plaintiffs argue that, in past negotiations, the Corporate Defendants have flown individuals from around the country to California and will experience not greater burden in flying these individuals to Ohio. The Plaintiffs also argue that the Corporate Defendants and ALPA can far more easily afford to transport their employees than the small group of plaintiffs.

As indicated, above, it is not possible, based upon the evidence and argument presented, to determine whose testimony will be of significance, and thus, where those individuals are located. Further, the Parties argue about travel from the state in which witnesses may be located. However, California is a large area and witnesses located in California may have to travel considerable distances to a trial located in California. Therefore, the Defendants have not shown that this factor weighs in favor of transfer.

**6.     Other Practical Problems**

The Defendants do not address this factor in their Memorandum supporting their Motion To Transfer. The Plaintiffs argue that the transfer of documents does not weigh into the analysis of this factor but the financial impact on the Parties of the costs associated with flights weighs in favor of not transferring. Further, the Defendants will manage costs easier than a small group of individuals and the Defendants will need to manage these costs regardless of the venue. Finally, the Plaintiffs argue that, if as the Defendants assert, many of the witnesses to the negotiations are

-14-

retired employees, the Defendants would not be affected by lost work days.

In their Reply, the Defendants argue that the practical problem associated with trying this case most expeditiously and inexpensively is "unquestionably" the time and expense associated with familiarizing this Court with the extensive factual and procedural background to the case. Although this Court recognizes that it has already been necessary to become familiar with much of the factual and procedural background to effectively decide Defendants' Motion To Transfer, this issue is addressed within another factor.

In addition to what they believe to be the "unquestionably" most important practical problem, the Defendants argue that work days lost to them are relevant. They also argue that the only currently active members of the airline industry are the Plaintiffs and not any of the Defendants.

What ever may be the practical problems associated with trying this case in Ohio, the Defendants have not proved that fewer will exist in California. This factor does not weigh in favor of transfer.

## PUBLIC'S INTERESTS

The relevant factors to be considered regarding the public's interests include: docket congestion; the burden of trial to a jurisdiction with no relation to the cause of action; the value of holding trial in a community where the public affected live; the familiarity of the court with controlling law; judicial economy and the avoidance of inconsistent judgments. Each will be addressed seriatim.

**1.      Docket Congestion**

The Defendants do not address this issue in the Memorandum In Support of their Motion

To Transfer. The Plaintiffs argue that, based upon Judicial Caseload Profiles, the Southern District of Ohio maintains less total filings, less civil filings and fewer pending cases than the Northern District of California, although the Northern District of California resolves matters slightly faster. The Defendants reply that the docket congestion analysis refutes Plaintiffs' argument that docket congestion favors not transferring because the data shows that the Northern District of California, on average, disposes of cases slightly more quickly than the Southern District of Ohio.

The data presented by the Plaintiffs is summary information presented for the entire Southern District of Ohio and is not necessarily representative of this particular Court. Further, this Court does not deem its docket to be too congested to accept another case, particularly when compared to the data presented for the Northern District of California. Therefore, this factor does not weigh in favor of transfer.

**2.      Burden of Trial To Jury With No Relation To the Cause of Action**

Neither Party presents argument on this factor. The Court, however, is aware that EWW had a major freight forwarding operation at the Dayton International Airport for several years. Therefore, the issues raised herein may relate to this community. This factor does not favor transfer.

**3.      Value of Trial Where Public Affected Live**

Again, neither Party presents argument on this factor. Based upon the Court's current understanding of the issues raised by the Plaintiffs, it is difficult to imagine that a trial either in Ohio or California will have a direct affect on the public in either location. Therefore, this factor is neutral with regard to transfer.

**4.     Familiarity of the Court With Controlling Law**

The issues in this matter appear to involve contract law and federal labor laws, both of which this Court is familiar. This factor does not weigh in favor of transfer.

**5.     Judicial Economy**

The Defendants argue that a transfer to the Northern District of California will avoid a waste of judicial resources. However, this argument is unavailing.

This argument is premised on the existence of multiple cases concerning the same complex factual issues in the Northern District of California. However, the five identified cases no longer exist in the Northern District of California and the court in the Northern District of California was not intimately involved with resolution of four of them.

*Rachford I* was dismissed primarily by agreement of the Parties. *ALPA v. EWA* was settled by the Parties. *Call v. Emery* and *Del Turco v. Emery* were dismissed by the Plaintiffs. Rachford II is no longer in the hands of the district court. Arbitral proceedings regarding breach of the SLA have begun and the plaintiffs have appealed the dismissal of the remaining claims, an appeal which remains pending.

The Defendants also argue that a lawsuit that relies upon a challenged interpretation of a settlement agreement entered in prior litigation "realistically" must be viewed as but a later state of the lawsuit originally brought. The Defendants also argue that a case that turns on the preclusive effect of a prior judgment of the transferee forum should likewise be transferred.

However, both of these arguments are unavailing in this case. In this case, the Settlement Agreement was reached by the some of the Parties with no apparent court involvement, the alleged "prior litigation" is no longer active and the issues brought by the Plaintiffs here focus on

the August 8 Settlement Agreement which occurred after almost all of the litigation in California was concluded.

In addition to the fact that the cases are no longer pending, the issues in the case brought here are not the same as the issues heard by the California District Court. The Plaintiffs that are now before this Court seek relief since the ALPA and the Corporate Defendants have terminated the CBA and since the Corporate Defendants now refuse to arbitrate their grievances, all actions taken after and/or as a result of matters adjudicated in the Northern District of California. This factor does not weigh in favor of transfer.

**6.     Avoidance of Inconsistent Judgments**

The Defendants argue that transfer to the Northern District of California is necessary to avoid inconsistent judgments. This argument is based upon a case from the Western District of Washington where the court found that a case with several highly technical factual issues should be transferred to a court that has become familiar with those factual issues. *Amazon.com v. Cendant Corp.*, 404 F.Supp.2d 1256, 1262 (W.D. Wash. 2005).

This argument too is unpersuasive as it applies to this case. First, this case does not have "highly technical" factual issues. Second, the factual issues, although not technical, presented by this case appear to be different from those already addressed by the Northern District of California. Third, this Court has had to become familiar with many of the factual and procedural issues to effectively adjudicate Defendants' Motion To Transfer.

The Defendants also argue that resolution of this matter depends upon the interpretation and effect of a Settlement Agreement and prior judgment in the Northern District of California. This argument too, is unpersuasive.

The Settlement Agreement was negotiated by the Parties and the case was dismissed based upon the existence of the Settlement Agreement. There is no indication that the Court was involved in the negotiation of the settlement. Also, assuming interpretation of the Settlement Agreement is an issue in this case, the Defendants have presented no reason why this Court is not able to interpret an agreement as well as any other court presented with the agreement.

## PLAINTIFFS' CHOICE OF FORUM

A plaintiff's choice of forum is normally given considerable weight and the balance of convenience, considering all of the relevant factors should strongly favor a transfer before a transfer is granted. The Defendants here argue that Plaintiffs' choice of forum is not entitled to dispositive consideration because the choice of an Ohio forum provides no significant counterbalance to the factors strongly favoring a California venue. However, this is not an argument that Plaintiffs' choice of forum is not given considerable weight. It merely argues that, in the eyes of the Defendants, the considerable weight is overcome by the other relevant factors.

The Defendants also argue that a transfer is necessary to defeat the Plaintiffs' forum shopping. This Court fails to see how the Plaintiffs could be forum shopping if they are entitled to bring their action in this Court and their choice of forum is not outweighed by other relevant factors. Further, it would seem that, to the same extent that Plaintiffs may be forum shopping by bringing their complaint in this Court, the Defendants may be forum shopping by attempting to have this matter transferred to the Northern District of California.

## CONCLUSION

The Plaintiffs have selected this forum and there is no argument that this is not a proper forum. Further, the Defendants have not shown that the balance of convenience, considering all

of the relevant factors is strongly, if at all, in favor of a transfer to the Northern District of California. Finally, Defendants' request for oral argument is not well founded. Therefore, the Defendants' Joint Motion To Transfer Venue (doc. #13) is OVERRULED.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-Third day of November, 2007.

                                                **s/Thomas M. Rose**

                                       _____
                                                  THOMAS M. ROSE
                                     UNITED STATED DISTRICT JUDGE

Copies furnished to:

Counsel of Record